ANTHONY *et al. v.* PRICE & MAAS *et al.*

1. That a deed of assignment for the benefit of creditors, made by a
failing or insolvent debtor, authorizes the assignee to proceed im-
mediately upon the discharge of his duties as such, without con-
taining any provision requiring him to give bond, does not invali-
date the assignment. The giving of a bond is required by the act
of October 16th, 1889, and this requirement must be obeyed be-
fore the assignee can legally begin the discharge of his duties,
whether the deed of assignment provides for the giving of a bond
or not. The act distinctly provides for carrying assignments into
effect in case the assignee named fails to give bond.
2. A deed of assignment is not invalidated because it directs that the
assignee shall sell for cash only; nor because it authorizes the
assignee to employ clerks; nor because authority is given the
assignee to dispose of property in a storehouse "where the same
is now situated or elsewhere."
3. A deed of assignment contained the following clauses and direc-
tions: "No money shall be paid over to the said creditors until
all of the expenses incurred in the execution of this trust and
deed of assignment shall have been first paid, including the com-
missions of the assignee, . . . all of the expenses of clerk hire,
insurance, taxes," etc. "And the said assignee, as soon as allowed
by statute, shall distribute the funds in his hands arising from the
sale of the said property and the collection of the said assets"
among certain designated preferred creditors, the balance, if any,
to be distributed among the general creditors. "The said assignee
shall make daily deposits of the sales and collections in" a named
bank, "and shall pay the same out from time to time according to
the true intent and meaning of this deed of assignment, for the
best interest of the creditors." Construing all these provisions
together, the true intent and meaning of the instrument is, that
the assignee shall, in advance of any distribution to creditors, pay
the current expenses and charges then accrued, and reserve a suffi-
cient amount for future expenses and charges, and not that there
should be no distribution whatever among the creditors until after
the last item of expense has been ascertained and paid.

4. It is not essential to the validity of a deed of assignment that values should be affixed to the various items of property included in the inventory and schedule thereto attached.

5. In the present case, the description of the goods and merchandise in the inventory attached to the deed of assignment, in connection with the fact that the inventory designates their location as being in a certain storehouse and warehouse therewith connected, and specifies what goods are stored upon each particular floor of these buildings, is sufficient.

6. Where goods have been ordered by a debtor about to fail, and he discovers he will be unable to pay for the same, cancels the orders given therefor, and declines to receive the goods, that a deed of assignment made by the debtor shortly thereafter sets forth these . facts and contains a list of these goods and of the persons from from whom they were ordered, not only affords no reason for declaring the assignment void, but is a strong circumstance tending to show that it was free from fraud.

7. There was no abuse of discretion in denying the petition for injunction and receiver.

June 26, 1893.

Petition for injunction, etc.   Before Judge MILLER. Bibb county. .At chambers, December 14, 1892.

A petition was brought by Anthony *et al.*, as creditors of Price & Maas, for the purpose of setting aside an assignment for creditors made by Price & Maas to R. M. Smith on November 21, 1892, and filed for record on the same day.   The prayer for injunction and receiver was denied, and the plaintiffs excepted.   The deed of assignment conveys to the assignee a stock of goods, etc., in trust for the' following purposes and with the following powers :   (1) The assignee shall take full, complete and exclusive charge of all the property herein conveyed, and shall dispose of the same to the best interest of said creditors of the assignors, at wholesale and retail, in lots and parcels and in such quantities as to him may seem meet and proper, and without delay to the creditors ; and in the event the assignee shall determine that it is for the best interest of the creditors to sell the personal property at wholesale, he shall before doing so advertise the same for at least ten days in

some newspaper in the county, and on the day named in the advertisement he shall proceed to sell the same at wholesale for cash. (2) He shall proceed immediately to collect all of the accounts, notes and choses in action of the assignors, to the best interest of their creditors; and to that end he is authorized to employ such counsel to assist him in the performance of this trust as he may determine. (3) He is authorized to employ such clerks, not exceeding three, as he shall determine, at such salaries as he may fix, not exceeding $85 each per month, and also such other assistance as he may require; and to dispose of the property in the storehouse where now situated or elsewhere. (4) He shall take all the moneys coming into his hands from the sale of the real and personal property and the collection and settlement of the choses in action, and proceed to pay off and discharge the following debts due by the assignors and now held by the parties next mentioned, without preference among the same, who are hereby declared to be the first preferred creditors of an equal preference as between themselves and without any superiority or dignity over each other. (Then follows a list of a dozen preferred creditors, the amount due each being given, and it appearing that each is secured by a mortgage.) No money shall be paid over to said creditors until all of the expenses incurred in the execution of this trust and assignment shall have been first paid, including the commissions of the assignee, not to exceed $1,200, and all of the expenses of clerk hire, insurance, taxes, feed of stock, counsel fees, and any and all other expenses incurred in and about the execution of this trust; the net proceeds remaining after said expenses have been paid shall be divided equally, share and share alike, among the parties named in this paragraph. And the assignee, as soon as allowed by statute, shall distribute the funds in his hands arising from the sale of the

property and the collection of the assets, as far as the same may go, among ·the persons in this paragraph mentioned, equally, share and share alike, until he shall have satisfied their claims as before enumerated, and shall then proceed as in the next paragraph mentioned. (5) If, after paying in full all the claims mentioned in the last paragraph, any money shall remain in his hands coming from the sale of said property, and from the collection of said assets, the assignee shall distribute the same equally and *pro rata*, share and share alike, among all of the other creditors of the assignors. (6) He shall make daily deposits of the sales and collections in the Exchange Bank of Macon, and shall pay the same out from time to time according to the true intent and meaning of this assignment, for the best interest of the creditors. (7) He shall not dispose of any of the property except for cash. It is then recited that the assignors have prepared and attached to this deed, at the time of executing it, a full and complete inventory and schedule of all the assets of every kind held, claimed or owned by them at said time, and an inventory and schedule of their indebtedness, which set forth in detail the names of, amounts due to, and residence of each of their creditors. The assignment was properly attested. Following the signature and on the same page was the acceptance of the trust by the assignee, with the same date as that of the assignment. Attached were the inventories and schedules referred to. The schedule of assets states the name and quantity of each article, without giving any price or value. Next to it is a list of articles of merchandise, accompanied with the statement that these are goods ordered by the assignors, *in transitu* and not actually received by them, the orders having been rescinded before the execution of the assignment, and the shippers notified that the assignors decline to receive them and claim no title to

them. Then followed a list of notes, mortgages, judgments, etc., giving names, amounts, and interest of the assignors therein; and then the affidavit properly verifying the schedule. The schedule of debts owed by the assignors gave the name and residence of each creditor, and the amount due, aggregating $58,230.15, the claims of petitioners being included therein, and showing that the mortgagees named in the assignment were residents of Bibb county, and that the petitioners were non-residents of Georgia. Next appeared a list of names, amounts and residences of persons from whom goods had been ordered and were *in transitu*, the shippers of which goods had been notified that the assignors declined to receive them, before the execution of the assignment. This schedule also is properly verified. On the day of the execution and filing of the assignment, the assignee filed a bond approved by the ordinary, in the sum of $50,000, conditioned for the faithful performance of his duties as such. On the assignment was entered the ordinary's certificate to this effect, with the statement that the bond was executed before the assignee entered on the performance of his duties.

The reasons set forth by the petitioners why the assignment is void are, in brief, as follows: It is a contract between the assignors and assignee for the latter to proceed immediately upon the execution of the trust, without making it a condition precedent that he shall first give the bond required by statute. It authorizes him to sell the property at retail, and thus continue the business of the assignors for an indefinite period, thereby hindering and delaying creditors. It authorizes him to sell at wholesale, and does not require him to give creditors notice of the time and place of sale. The authority to employ clerks as stated, would authorize him to continue their employment indefinitely, and thus

hinder and delay creditors. The authority to dispose of the property in the same storehouse where it is now situated or elsewhere, would authorize him to ship it beyond the jurisdiction of the courts of Bibb county and out of the State; and such provision is calculated to hinder, delay, injure and defeat creditors. The effect of the clause forbidding the payment of any money to creditors until the expenses incurred shall have been paid, is to hinder and delay creditors, and tends to coerce them into terms of settlement or compromise. It would be impossible to determine what these expenses were until the trust was fully executed, including the collection of the choses in action by such attorneys as might be chosen by the assignee, and the payment of all insurance, taxes and every other expense incurred. The provision for payment of his commissions before any money is paid out by him, is to hinder and delay creditors, for the reason that until the trust is fully executed it could not be determined what proportion of the $1,200 he would be entitled to, whether measured by the amount of labor to be performed, or the amount of cash to be realized and disbursed. The clause that he shall not dispose of any of the property except for cash, is such a limitation on his powers as would compel him to sacrifice the property; the assignors have no power to put such limitation upon the trustee of the creditors; and this clause, together with that which authorizes the assignee, should he determine it best to sell the property in bulk, to advertise for only ten days, without requiring that he should otherwise give notice to creditors, the preferred ones being resident of Bibb county and the non-preferred being non-resident, shows that it was the intention of the assignors to hinder, delay and defeat the non-preferred, and that the assignment was made solely in the interest of the preferred creditors. The schedule of assets, giving no values

whatever, is not such a full and complete schedule as is required by law; the failure to give values was to conceal from creditors the value of the trust estate created for their benefit; without such values the assignee could not know at what price to sell the property; the ordinary could not determine how to fix the amount of the assignee's bond; and the creditors could have no notice of the value of the trust, so as to determine whether they would accept or reject it. There is no such full and accurate description of the goods assigned as that creditors, if they should desire to reclaim goods purchased in fraud, could identify the same. And the assignment is void because of the entries on the schedules touching goods previously ordered and *in transitu*, but which orders were rescinded and the shippers notified before the execution of the assignment, this being a reservation of benefit and interest to the assignors.

The defendants showed cause against the grant of injunction and receiver, by demurrer and answers. They set up that the assignment was not made for the purpose of hindering, delaying or defrauding their creditors, and was made strictly in pursuance of law. They deemed it necessary for the assignee to have power to settle and compromise doubtful claims, in order to make collections and pay the creditors; that he would require the services of counsel in so doing, as he was not a lawyer; and that the services of three clerks at the hire named would be required. The preferred creditors are *bona fide.* The assignee is required to pay out the assets without delay to the creditors, nor does it contemplate that he shall hold possession of the property for an indefinite period. As to the goods *in transitu* and in the depot at Macon, defendants say that, after they realized that they would not be able to pay for them as they had contracted, it would not have been good faith

to have taken them; they did not desire to commit a fraud upon any one; and the consignors would have had the right to stop the goods *in transitu.* The assignment properly discloses what creditors were consignors of these goods. Defendants did not ascertain that they were insolvent until on or about November 18, 1892, on which day they paid large sums for goods purchased, for which drafts and notes were presented to them., On the same day they borrowed $400 from one of the preferred creditors, to meet their indebtedness for goods, believing they could pull through, but failing to collect debts due them, and receiving information from their collector that their debtors were not paying accounts that they regarded as solvent, they realized that, owing to the stringency of money and the condition of the country, they could not meet the maturing demands of their creditors; and this they did not realize or know until on or about November 19, 1892. The assignee understood when he was appointed that he would have to give bond before he could enter on his duties; the amount thereof was fixed by the ordinary, after examining the assignment, as being sufficient; if more is or should be required, the assignee is ready to give it; and this bond is ample, the securities thereon being worth at least $150,000. The assignors have accounted for every dollar in the assignment, and for every article of property held, claimed or owned by them. It was made in good faith, in no way to hinder the creditors, but simply for the purpose of winding up the business of the firm and to dispose of their assets and pay their creditors with the least expense possible, preferring such creditors as in all good conscience they ought to have preferred, most of these not having received any benefit in any way of selling goods to the assignors, and having loaned them money in their business.

v 92-12

HARDEMAN, DAVIS & TURNER, HILL, HARRIS & BIRCH and STEED & WIMBERLY, for plaintiffs..

WASHINGTON DESSAU, S. A. REID and A. O. BACON, for defendants.

LUMPKIN, Justice.

1. The failure of a deed of assignment to provide that the assignee shall give bond does not invalidate the assignment. The law takes care of this feature of assignments, and forbids an assignee from entering upon the discharge of his duties until he has given bond; and if he fails entirely to do so, the law provides for carrying the assignment into effect, by allowing the creditors to select some person to act as assignee, who must give bond; and if this is not done, the judge of the superior court may appoint a receiver. Acts of 1889, p. 108.

2. If creditors press their claims against a debtor by the ordinary method of suit, judgment, execution, levy and sale, the sale must be for cash only. To allow levying officers to extend credit would often get matters in worse condition than they were originally, and render the collection of debts even more difficult than under the present system. Why, then, should an assignment be void because it directs the assignee to sell for cash only? It is questionable if any other direction would, as a general rule, be safe or wise; but be this as it may, the requirement to sell for cash only can hardly be con-- sidered vicious. If the assignee needs clerks to aid him in disposing of a large stock of goods, he ought to have them; and if he can sell property in a storehouse to better advantage by exposing it to sale at some other place, he ought to be allowed to do so. Should the assignee abuse his powers or his discretion in any way, the court can hold him accountable.

3. The assignment in the present case contained the clauses and directions set forth in the third head-note. Taken altogether, they simply mean that the expenses.

and charges of the administration by the assignee shall
be given priority in dignity and in time of payment
over any distribution to creditors, and not that the latter
shall receive nothing at all till the administration is
complete. Under this instrument, the assignee may
make payments to the creditors from time to time, tak-
ing care to pay all current expenses as they become due,
and to reserve enough money to pay all future expenses
which may properly arise.

4. If the items of property covered by an assignment
are otherwise sufficiently described, affixing the value is
not essential to the validity of the assignment. If values
were affixed, the ordinary, in fixing the amount of the
bond to be given by the assignee, would not be bound
thereby. He must, and presumably will, exercise his
own judgment and discretion in this matter, and will no
doubt take the proper steps to inform himself of the
true value of the property. It would be better, however,
for the assignor to honestly affix to each item of prop-
erty his own estimate of its value.

5. In some respects the lengthy schedules of property
attached to the assignment were very accurate and spe-
cific in describing the goods; in others they were scarcely
sufficient; but inasmuch as the location of all the prop-
erty was definitely stated to be in a designated store-
house and warehouse, and the particular floors of these
buildings upon which such and such goods were stored
were specified, we think the description, taken as a
whole, sufficient for all practical purposes.

6. The conduct of the assignors, as indicated in the
6th head-note, was to their credit. We think it tends
very strongly to show an honest purpose on their part
to deal fairly with their creditors, to conceal nothing,
and to present the whole truth of their financial condi-
tion and situation. Certainly such conduct, in these
days so rare, should not make the assignment void. To

so hold would encourage, if it did not actually invite, fraud on the part of failing debtors.

7. We have briefly covered the material points in this case, and find no difficulty in sustaining the judgment denying the prayers for injunction and receiver.

*Judgment affirmed.*